

NO JS-6

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d). *Priority Sent.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ANGELA LOCKHART and GAIL SCORZA, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF LOS ANGELES, LEE BACA, individually and in his official capacity as SHERIFF OF LOS ANGELES COUNTY, <br><br> Defendants. | CASE NO.: CV 07-1680 ABC (PJWx) <br><br> **ORDER RE: DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE** |

Pending before the Court is Defendants County of Los Angeles (the "County") and Sheriff Lee Baca's ("Defendant Baca's") (collectively "Defendants'") Motion to Dismiss and Motion to Strike Portions of Plaintiffs Angela Lockhart and Gail Scorza's ("Plaintiffs'") Second Amended Complaint ("SAC"), filed on August 14, 2007. Plaintiffs opposed on September 10, 2007, and Defendants replied on September 17, 2007. The Court finds this matter appropriate for resolution without oral argument and VACATES the October 22, 2007 hearing date. See Fed. R. Civ. P. 78; Local Rule 7-15. The Court GRANTS Defendants' motion in its entirety as discussed below.

35

**I.   INTRODUCTION AND FACTUAL BACKGROUND**

Plaintiffs are employees in the Los Angeles County Sheriff's Department and bring the instant case on behalf of themselves and other similarly situated employees for, among other acts, failing to pay Plaintiffs for "all hours they work, including overtime." (SAC ¶ 1.) According to Plaintiffs, those uncompensated hours included performing pre-shift and post-shift employment activities such as: (1) obtaining debriefing by the deputy from the prior shift; (2) preparing for inspections; (3) preparing, reviewing and finalizing investigation and arrest reports; (4) logging on to their computers; (5) performing relief; (6) walking to various areas where they were required to perform tasks; (7) collecting, returning, cleaning and maintaining equipment and uniforms; (8) donning and doffing uniforms and protective gear; and (9) inspecting equipment, weapons, vehicles, judge's chambers, and other rooms and inmate transports. (Id. ¶ 32.) Plaintiffs also allege that they were required to work overtime on their days off by taking work-related phone calls, filling out reports, preparing for court appearances, driving to the station before court to obtain necessary reports for appearances, driving to and from court, cleaning weapons, and maintaining and furnishing required uniforms and gear. (Id. ¶ 33.) Plaintiffs claim that Defendants also fail to provide them meal and rest periods during their shifts in violation of the California Labor Code. (Id. ¶ 29.)

Plaintiffs are subject to two "Memoranda of Understanding," the "ALADS MOU" and the "PPOA MOU," which they claim Defendants breached by failing to pay overtime. (Id. ¶¶ 127, 128.) Plaintiffs have also alleged that Defendants falsely represented in recruitment materials – specifically on one side of a 5 x 7 1/2 card stating, "Paid Overtime"

1   - that Plaintiffs would be paid appropriately for all overtime

2   actually worked.  (Id. ¶ 36.)

3        Plaintiffs have alleged eleven causes of action: (1) a

4   preliminary injunction under Federal Rule of Civil Procedure 65

5   against both Defendants; (2) violation of 29 U.S.C. § 207(a) against

6   both Defendants for failure to pay overtime; (3) violation of 29

7   U.S.C. § 207(o) against both Defendants; (4) violation of California

8   Labor Code § 226.7 against both Defendants for failure to provide meal

9   periods; (5) violation of California Labor Code § 226.7 against both

10  Defendants for failure to provide rest periods; (6) violation of

11  California Labor Code §§ 1196, 1198, and 510 against both Defendants

12  for failure to pay overtime; (7) violation of California Labor Code §

13  512 against both Defendants for failure to provide meal periods; (8)

14  fraud against both Defendants; (9) intentional misrepresentation

15  against the County only; (10) negligent misrepresentation against the

16  County only; and (11) common law breach of contract against both

17  Defendants.

18       Defendants challenge the sufficiency of Plaintiffs' fourth

19  through eleventh claims.   Defendants argue that Plaintiffs' state law

20  Labor Code claims (claims four, five, six, and seven) are barred both

21  because the Industrial Welfare Commission's ("IWC's") Wage Orders do

22  not apply to public employees and because Defendants' payment of wages

23  is protected by the "Home Rule" provisions in the California

24  Constitution.  Defendants challenge Plaintiffs' eighth claim for fraud

25  against both Defendants on the ground that it is insufficiently pled

26  under Federal Rule of Civil Procedure 9(b).  Defendants challenge

27  Plaintiffs' eighth, ninth, and tenth claims for misrepresentation

28  against the County on the ground that the County is immune from such

1  suits.  Finally, Defendants contend that Plaintiffs' eleventh claim

2  for breach of the MOUs fails because they have failed to exhaust the

3  grievance and arbitration procedures in those contracts.  Defendants

4  also move under Federal Rule of Civil Procedure 12(f) to strike

5  Plaintiffs' prayer for punitive damages in paragraphs 37, 43, and 106

6  in the SAC.

7  **II.   LEGAL STANDARD**

8       A Rule 12(b)(6) motion tests the legal sufficiency of the claims

9  asserted in the complaint.  A Rule 12(b)(6) dismissal is proper only

10 where there is either a "lack of a cognizable legal theory" or "the

11 absence of sufficient facts alleged under a cognizable legal theory."

12 Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir.

13 1988);  accord Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 248 (9th

14 Cir. 1997) ("A complaint should not be dismissed 'unless it appears

15 beyond doubt that the plaintiff can prove no set of facts in support

16 of his claim which would entitle him to relief.'") In other words, a

17 complaint need not contain detailed factual allegations, but it must

18 allege facts sufficient to raise a right to relief that rises above

19 the level of mere speculation and is plausible on its face.  See Bell

20 Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965, 1969 (2007).  A court

21 must accept as true all material allegations in the complaint, as well

22 as reasonable inferences to be drawn from them.  See NL Industries,

23 Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986); see also Russell v.

24 Landrieu, 621 F.2d 1037, 1039 (9th Cir. 1980) (finding that the

25 complaint must be read in the light most favorable to the plaintiff).

26 However, a court need not accept as true unreasonable inferences,

27 unwarranted deductions of fact, or conclusory legal allegations cast

28 as factual allegations.  See Western Mining Council v. Watt, 643 F.2d

4

1  618, 624 (9th Cir. 1981); <u>Hiland Dairy, Inc. v. Kroger Co.</u>, 402 F.2d

2  968, 973 (8th Cir. 1968).

3      Moreover, in ruling on a 12(b)(6) motion, a court generally

4  cannot consider material outside of the complaint (<u>e.g.</u>, those facts

5  presented in briefs, affidavits, or discovery materials).  <u>See</u> <u>Branch</u>

6  <u>v. Tunnell</u>, 14 F.3d 449, 453 (9th Cir. 1994).  A court may, however,

7  consider exhibits submitted with the complaint.  <u>See</u> <u>id.</u> at 453-54.

8  Also, a court may consider documents which are not physically attached

9  to the complaint but "whose contents are alleged in [the] complaint

10 and whose authenticity no party questions."  <u>Id.</u> at 454.  Further, it

11 is proper for the court to consider matters subject to judicial notice

12 pursuant to Federal Rule of Evidence 201.  <u>See Mir, M.D. v. Little Co.</u>

13 <u>of Mary Hosp.</u>, 844 F.2d 646, 649 (9th Cir. 1988).

14      Defendants have also moved to strike certain portions of

15 Plaintiffs' Complaint under Rule 12(f).  "Under Federal Rule of Civil

16 Procedure 12(f), the Court 'may order stricken from any pleading . . .

17 any redundant, immaterial, impertinent or scandalous matter.'"

18 <u>Bureerong v. Uvawas</u>, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996).

19 Motions to strike are generally regarded with disfavor.  <u>Id.</u>  A

20 "matter will not be stricken from a pleading unless it is clear that

21 it can have no possible bearing upon the subject matter of the

22 litigation[.]"  <u>State of Cal. Dept. of Toxic Substances Control v.</u>

23 <u>Alco Pacific, Inc.</u>, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002).  When

24 considering a motion to strike, courts must view the pleading in the

25 light more favorable to the pleader.  <u>See</u> <u>Lazar v. Trans Union LLC</u>,

26 195 F.R.D. 665, 669 (C.D. Cal. 2000).  Moreover, a court must deny the

27 motion to strike if any doubt exists whether the allegations in the

28 pleadings might be relevant in the action.  <u>In re 2TheMart.com, Inc.</u>

1   Sec Lit., 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000).

2   **III. REQUEST FOR JUDICIAL NOTICE**

3       **A.   Defendants' Request**

4       Federal Rule of Evidence 201 allows a court to take judicial

5   notice of facts that are either "(1) generally known within the

6   territorial jurisdiction of the trial court; or (2) capable of

7   accurate and ready determination by resort to sources whose accuracy

8   cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court

9   may also take notice of documents which are not physically attached to

10  the complaint but "whose contents are alleged in [the] complaint and

11  whose authenticity no party questions." Branch, 14 F.3d at 454. A

12  court "may take judicial notice of court filings and other matters of

13  public record." Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d

14  741, 746 n.6 (9th Cir. 2006) (citation omitted).

15      Defendant requests judicial notice of several documents:

16      (1)   the grievance procedures contained in the 2005 MOU between
17          the Authorized Management Representatives and the
        Association for Los Angeles Deputy Sheriffs;

18      (2)   the grievance procedures contained in the 2005 MOU between
        the Authorized Management Representatives and the Los
19          Angeles County Professional Police Officer's Association;

20      (3)   the February 6, 2006 Order in Reed v. County of Orange, Case
        No. SACV 05-1103 CJC (ANx) (C.D. Cal. February 6, 2006)
21          (Carney, J.);

22      (4)   the July 21, 2006 Order in Vucinich v. City of Los Angeles,
        Case No. CV 06-249 RWL (CWx) (C.D. Cal. July 21, 2006) (Lew,
23          J.);

24      (5)   the complaint in Vucinich v. City of Los Angeles, Case No.
        BC34451 (filed December 14, 2005);
25

26      (6)   a January 10, 2003 Department of Labor Standards Enforcement
        ("DLSE") Letter regarding Temporary Employment Agency
        Placements with Public Employers;
27

28      (7)   the 2002 DLSE Enforcement Manual, Sections 43.6.4 and
        43.6.4.1;

(8)   the IWC Statement as to the Basis for Wage Order No. 17
      Regarding Miscellaneous Employees; and

(9)   the August 24, 2005 Order in <u>Alaniz v. City of Los Angeles</u>,
      Case No. CV 04-8592 GHK (JWJx) (C.D. Cal. August 24, 2005)
      (King, J.).

Plaintiffs conditionally object to notice of the two MOUs,
arguing that, "[w]hile the court may take judicial notice of the
general meaning of words, phrases, and legal expressions, documents
are judicially noticeable only for the purpose of determining what
statements are contained therein, not to prove the truth of the
contents or any party's assertion of what the contents mean." <u>United
States v. Southern Cal. Edison Co.</u>, 300 F. Supp. 2d 964, 975 (E.D.
Cal. 2004).  However, a Court may consider documents which are not
physically attached to the complaint but "whose contents are alleged
in [the] complaint and whose authenticity no party questions."
<u>Branch</u>, 14 F.3d at 454.  Here, Plaintiffs specifically rely on the
MOUs in stating their claim for breach of contract, and they do not
contest their authenticity.  The Court finds that judicial notice of
these documents is appropriate and overrules Plaintiffs' objections.

Plaintiffs also conditionally object to the court orders offered
by Defendant, arguing that the Court may take judicial notice of them
"to show, for example, that a judicial proceeding occurred or that a
document was filed in another court case, but a court may not take
judicial notice of findings of facts from another case." <u>Player v.
Woodford</u>, 2006 WL 4395768, *12-13 (S.D. Cal. 2006).  Plaintiffs are
correct that the Court may not take notice of the facts in these
opinions, but the Court certainly may consider the legal conclusions
in these decisions as persuasive legal authority.  <u>See BP West Coast
Prods. LLC v. May</u>, 347 F. Supp. 2d 898, 901 (D. Nev. 2004); <u>cf. Lee v.</u>

1   City of Los Angeles, 250 F.3d 668, 690 (9th Cir. 2001) (noting that

2   "when a court takes judicial notice of another court's opinion, it may

3   do so not for the truth of the facts recited therein, but for the

4   existence of the opinion, which is not subject to reasonable dispute

5   over its authenticity."). With these limits in mind, the Court

6   overrules Plaintiffs' objections.[1]

7        Plaintiffs unconditionally object to judicial notice of the DLSE

8   Letter, the DLSE enforcement manual, and the IWC's Statement regarding

9   Wage Order 17. These documents, however, are public records, properly

10   the subject of judicial notice. See Lee, 250 F.3d at 690 ("A court

11   may take judicial notice of matters of public record without

12   converting a motion to dismiss into a motion for summary judgment.").

13   Plaintiffs do not dispute the content of these documents, but rather

14   their legal significance, so the Court may take judicial notice of

15   these documents and overrules Plaintiffs' objection to them.

16        **B.   Plaintiffs' Request**

17        Plaintiffs seek judicial notice of a April 6, 2006 order in

18   Edwards v. City of Long Beach, Case No. 05-8990 ABC (C.D. Cal. April

19   6, 2006) (Collins, J.). Defendants have not objected to Plaintiffs'

20   request and, for the reasons stated above, the Court finds judicial

21   notice of this order proper. See BP West Coast Prods., 347 F. Supp.

22   2d at 901.

23   **IV.   ANALYSIS**

24        **A.   Plaintiffs' Fourth, Fifth, Sixth, and Seventh Claims Against**

25             **the County for Violations of the California Labor Code**

26        In Plaintiffs' fourth, fifth, sixth, and seventh claims, they

27   _____

28   [1]The Court similarly overrules Plaintiffs' objections to judicial
     notice of the complaint in the Vucinich case.

8

assert that Defendants violated California Labor Code sections 226.7, 1194, 1198, 510, and 512 by failing to provide meal and rest periods and for requiring Plaintiffs to work overtime without overtime pay. Each of these sections, however, is silent on its application to public agencies.  The parties dispute two points: (1) which of the IWC Wage Orders – on which liability under these statutes is based – applies to Plaintiffs; and (2) whether Labor Code sections 510 and 512 aborgated the public employee exemptions found in the IWC wage orders. Section 226.7 states: "No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission."  Similarly, section 1198 states: "The maximum hours of work and the standard conditions of labor fixed by the commission shall be the maximum hours of work and the standard conditions of labor for employees.  The employment of any employee for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful."  Sections 510 and 512 set the parameters of overtime and meal periods for employees.

Established in 1913, the IWC is a five-member "state agency empowered to formulate regulations (known as wage orders) governing employment in the state of California."  Morillion v. Royal Packing Co., 22 Cal. 4th 575, 581 (2000).  Originally, "the IWC's mission was to regulate the wages, hours and conditions of employment of women and children employed in this state," but "a number of federal judicial decisions invalidated a substantial portion of the then-prevailing IWC wage orders on the ground that the limited application of such orders to women workers (and children) violated the prohibition on sex discrimination embodied in title VII of the federal Civil Rights Act of 1964."  Collins v. Overnite Transp. Co., 105 Cal. App. 4th 171, 174

1 (2003) (emphasis in original and citations omitted).  In response,

2 "the California Legislature in 1972 and 1973 amended the applicable

3 provisions of the Labor Code to authorize the IWC to establish minimum

4 wages, maximum hours and standard conditions of employment for all

5 employees in the state, men as well as women."  Id. (emphasis in

6 original).

7       "Judicial authorities have repeatedly emphasized that in

8 fulfilling its broad statutory mandate, the IWC engages in a quasi-

9 legislative endeavor, a task which necessarily and properly requires

10 the commission's exercise of a considerable degree of policy-making

11 judgment and discretion."  Id. (citing Industrial Welf. Comm'n v.

12 Superior Ct., 27 Cal. 3d 690, 701 (1980)).  In exercising this

13 authority, the IWC has promulgated 17 wage orders (plus a general wage

14 order governing the minimum wage), each of which follows a similar

15 format, but applies to separate industries or occupations.  See

16 Morillion, 22 Cal. 4th at 581; Cal. Code Regs., tit. 8, §§ 11000 et

17 seq.  Wage Orders one through 16 regulate the wages, hours, and

18 working conditions for specific occupations and industries, while Wage

19 Order 17 governs the same for "miscellaneous employees."  See Cal.

20 Code Regs., tit. 8, §§ 11000 et seq.

21       The California Legislature passed the Eight-Hour-Day Restoration

22 and Workplace Flexibility Act of 1999 (the "Act") after the IWC

23 amended five Wage Orders in 1997 to, among other things, "eliminate[]

24 the state's daily overtime rule in favor of the less restrictive

25 weekly overtime rule of the federal FLSA."  Collins, 105 Cal. App. 4th

26 at 176.  The Act declared these amendments invalid and reinstated the

27 wage orders as they existed in 1997.  Id.  The Act also established a

28 new statutory scheme governing hours and overtime compensation for all

1  industries and occupations and set out a new eight-hour work day for
2  all employees.  See Cal. Labor Code §§ 500 et seq.  The Act also
3  established an Interim Wage Order that was later promulgated as Wage
4  Order 17, which did not exist in 1997.  (See Interim Wage Order of
5  2000 available at www.dir.ca.gov/iwc/SummaryInterimWageOrder20000
6  .html).  Wage Order 17 became effective in 2001 to cover "[a]ny
7  industry or occupation not previously covered by, and all employees
8  not specifically exempted in, the Commissions's wage orders in effect
9  in 1997, or otherwise exempted by law[.]"  Cal. Code Regs., tit. 8, §
10 11170(1)(A).

11              1.   Labor Code Section 226.7

12       The parties dispute which, if any, of the wage orders apply to
13 Plaintiffs in order to receive the protection of Labor Code section
14 226.7.  Wage Order 17 contains a clause that preserves any exemption
15 that existed in the wage orders prior to 1997.  Plaintiffs argue they
16 were never covered by any prior wage order, and therefore could not
17 have been exempted from Wage Order 17.  Thus, they contend that they
18 are covered by Wage Order 17 and protected by the provisions of
19 section 226.7, relying on this Court's decision in Edwards v. City of
20 Long Beach, Case No. CV 05-8990 ABC (C.D. Cal. April 6, 2006)
21 (Collins, J.) and a decision from the Southern District of California
22 in Abbe v. City of San Diego, Case No. CV 05-1629 DMS, 2006 U.S. Dist.
23 LEXIS 79010 (S.D. Cal. October 19, 2006) (Sabraw, J.).  In contrast,
24 Defendants argue that a blanket exemption for public employees existed
25 in the wage orders in 1997 even if none of the wage orders
26 specifically applied to Plaintiffs, and Wage Order 17 preserved that
27 exemption.  Alternatively, Defendants rely on Reed v. County of
28 Orange, Case No. SACV 05-1103 CJC at 8 (C.D. Cal. February 6, 2006)

1  (Carney, J.), and argue that if Plaintiffs fall within any wage order,

2  they would fall within Wage Order 4, but are specifically exempted

3  from it as public employees, so they would also be exempt from Wage

4  Order 17.  Therefore, Defendants reason that, under either theory, no

5  wage order applies to Plaintiffs, and they are not protected by

6  section 226.7.

7      "As quasi-legislative regulations, the wage orders are to be

8  construed in accordance with the ordinary principles of statutory

9  interpretation."  Collins, 105 Cal. App. 4th at 178.  "If the language

10 is susceptible to more than one reasonable meaning, we turn to

11 standard rules of statutory construction and consider other indicia of

12 legislative intent, including the statutory scheme, legislative

13 history and purpose, and public policy."  Mahon v. County of San

14 Mateo, 139 Cal. App. 4th 812, 821 (2006).  The language in Wage Order

15 17 is ambiguous as to the scope of the phrase, "all employees not

16 specifically exempted in the Commission's wage orders in effect in

17 1997."  Cal. Code Regs., tit. 8, § 11170(1)(A).  On one hand, as

18 Plaintiffs advocate, it could refer to exemptions found in each

19 specific wage order and unless employees are specifically covered by a

20 wage order (and then exempted), they cannot be exempted from Wage

21 Order 17.  On the other hand, as Defendants argue, this language could

22 refer to a broad exemption for public employees in all but two wage

23 orders in 1997, and Plaintiffs need not fall within a specific wage

24 order to be exempt from Wage Order 17.

25     In 2001, when Wage Order 17 was enacted, public employees were

26 exempt from all but two wage orders.  See Cal. Code Regs., tit. 8, §§

27

28

1  11010(1)(B)-11080(1)(B), 11090(1)(B), 11120(1)(B), 11130(1)(B).[2]

2  These exemptions had the effect of excluding public employees from any

3  coverage under the wage orders (except for the narrow and potentially

4  non-existent group of agricultural and household public employees).

5  Wage Order 17, in contrast, covers "all employees not specifically

6  exempted in the Commission's wage orders in effect in 1997," Cal. Code

7  Regs., tit. 8, § 11170(1)(A), and was intended to cover any

8  occupations and industries not already covered <u>or</u> exempted, such as

9  mining, logging, and construction.  (<u>See</u> Interim Wage Order of 2000

10 (enacted with alterations as Wage Order 17) available at

11 www.dir.ca.gov/iwc/SummaryInterimWageOrder20000.html.)  Plaintiffs

12 have pointed to nothing in the legislative or administrative history

13 of Wage Order 17 to suggest that the IWC intended to keep intact the

14 specific exemptions for public employees under each wage order, yet

15 permit public employees to avail themselves of Wage Order 17 if they

16 otherwise do not fall within a specific wage order.

17      A review of the entire legislative scheme supports this

18 conclusion.  The IWC passed Wage Order 17 against the backdrop of the

19 other 16 wage orders, which created a near-blanket exclusion of public

20 employees, and "in passing Order 17, the IWC must be presumed to have

21 known that almost all of the previous Orders it had passed

22 specifically excluded public employees."  <u>See</u> <u>Reed</u>, Case No. SACV 05-

23 1103 at 8.[3]  Even the DLSE, the state agency charged with enforcing

24

25      [2]Only Wage Orders 14 and 15 covering agriculture and household
   employees lack a specific exemption for public employees.  Cal. Code
26 Regs., tit. 8, §§ 11140(2)(D), 11150(2)(I).

27      [3]This blanket exclusion makes sense for county employees because
   the state is constitutionally prevented from dictating their
28                                                         (continued...)

1  the wage orders, has taken the position that public employees are

2  exempt from the meal and rest period sections of the wage orders, and,

3  notably, has treated this exemption as a blanket one and not linked to

4  the occupation or industry of each public employee.  (See Def.'s

5  Request for Judicial Notice ("RJN"), Ex. E at 43-5 (DLSE Enforcement

6  Policies and Interpretations Manual), Ex. D (January 10, 2003 DLSE

7  Opinion Letter).)  Had the IWC intended to act contrary to its policy

8  of a blanket exemption and create coverage of some public employees

9  who otherwise do not fall within the wage orders, it presumably would

10 have done so more explicitly.  See Reed, Case No. SACV 05-1103 at 8

11 ("If the IWC had intended to include public employees in Order 17, the

12 IWC likely would not have indicated an intent to continue categorical

13 exclusions contained in those previous orders.").  Instead, the IWC

14 chose to use general language in Wage Order 17 intended to incorporate

15 the general policy of exempting public employees.  Id. ("The IWC's act

16 of passing a 'catch all' order that explicitly excluded all employees

17 that had been excluded from previous IWC orders, where those previous

18 orders specifically excluded public employees, indicates that the IWC

19 intended to leave in place its general policy of excluding public

20 employees from its wage orders.").

21     Even if Plaintiffs must be covered by a specific wage order to be

22 exempted under Wage Order 17, they would be covered by Wage Order 4.

23

24 _____

      [3](...continued)
25 compensation.  See In re Work Uniform Cases, 133 Cal. App. 4th 328,
   335 (2005) ("The constitutional language is quite clear and quite
26 specific: the county, not the state, not someone else, shall provide
   for compensation of its employees.  Although the language does not
27 expressly limit the power of the Legislature, it does so by necessary
   implication." (quoting County of Riverside v. Superior Ct., 30 Cal.
28 4th 278, 285 (2003)) (emphasis in original).

1  Wage Order 4 covers "professional, technical, clerical, mechanical,

2  and similar occupations."  Cal. Code Regs., tit. 8, § 11040.  It

3  defines these employees to include over 70 different occupations in

4  the areas of "professional, semiprofessional, managerial,

5  supervisorial, laboratory, research, technical, clerical, office work

6  and mechanical occupations."  Id. § 11040(2)(O).  Among those

7  occupations listed are "guards," "inspectors," and "investigators," as

8  well as "other related occupations listed as professional,

9  semiprofessional, technical, clerical, mechanical, and kindred

10 occupations."  Id.  These terms are more than broad enough to

11 encompass Plaintiffs as police officers:

12         The nonexclusivity of Order 4's listed professions, and the
           fact that the Order covers "kindred" and "similar" occupations,
13         indicates that all occupations analogous to those listed are
           covered by the Order.  The list of occupations contained in
14         Section 2(O) contains at least three occupations similar to that
           of police officer or sheriff: guards, inspectors, and
15         investigators.  The fact that Order 4 is to apply to
           "semiprofessional" and "supervisorial" occupations, in addition
16         to "professional" occupations, also suggests that the Order is to
           have a broad scope.  Based on this language, Order 4 must be
17         understood to include the peace officer occupation.

18 Reed, Case No. SACV 05-1103 at 9.

19         Neither this Court's decision in Edwards nor the decision from

20 the Southern District of California in Abbe dictates a different

21 result.  In Edwards, this Court did not address the merits of the

22 plaintiffs' argument that Wage Order 17 applied to police officers,

23 but rather disposed of it "without prejudice" in two short paragraphs:

24         Defendant contends that Plaintiffs cannot maintain their
           claims under California Labor Code sections 226.7 and 512 because
25         those labor codes do not apply to public employees like
           Plaintiffs.  In support of this argument, Defendant relies on
26         Industrial Welfare Commission ("IWC") Order 4-2001, which,
           according to Defendant, exempts public employees from the
27         protections afforded by California Labor Code sections 226.7 and
           512.  Plaintiffs, on the other hand, argue that IWC Order 17-2001
28         controls.  Unlike Order 4-2001, Order 17-2001 contains no

1    language exempting public employees.

2         The Court rejects Defendant's argument without prejudice.
     Although Defendant urges the Court to apply Order 4-2001,
3    Defendant has simply not explained why the Court should do so or
     why Order 17-2001 does not apply.  The Court should not have to -
4    and will not - do Defendant's work.  Rather, if Defendant
     believes that, as a matter of law, Plaintiffs cannot maintain
5    their section 226.7 and section 512 claims, Defendant must
     logically and coherently explain why this is so.

6

7    Edwards, Case No. CV 05-8890 at 3-4.  This summary disposition of the

     issue in Edwards does not control the Court's decision here.

8

9         While the court in Abbe did analyze this issue, this Court

10   disagrees with its reasoning and outcome.  In that case, the court

11   addressed the precise issue here and found that the plaintiff police

12   officers were not covered by Wage Order 4.  The Court reasoned that

13   "[t]he list of over 80 occupations identified in Wage Order 4-2001,

14   set forth in section 2(O), does not mention police officers.  Instead,

15   the list includes among others: guards, investigators, and 'other

16   related occupations.'"  Abbe, 2006 U.S. Dist. LEXIS 79010, at *27.

17   The court went on to state, "[t]he City argues, without citing any

18   authority, that 'other related occupations,' includes police officers.

19   Given the lack of authority supporting the City's position, this Court

20   declines to hold that police officers are covered by Wage Order 4-

21   2001."  Id. (citing Lusardi Constr. Co. v. Aubry, 1 Cal. 4th 976, 985

22   (1992) for the proposition that "statutes governing conditions of

23   employment are construed broadly in favor of protecting employees.").

24        Despite the court's conclusion in Abbe, the IWC's omission of

25   police officer as one of the listed occupations covered by Wage Order

26   4 does not automatically render Wage Order 4 inapplicable to them.

27   The IWC's failure to specifically mention police officers makes

28   logical sense because the occupation is, by definition, limited to

public employment.  Including police officers in the listed
occupations would have been an exercise in futility since that
occupation would have been included only to be automatically exempt
from Wage Order 4 under the public employee exemption.  The IWC had no
need to include the public occupation of police officer just to
automatically exempt it.[4]  To the contrary, the IWC did include the
private equivalent of police officer by including "guard" and
"investigator," suggesting that police officers would be covered by
Wage Order 4 if they were not public employees.  Of course, the IWC
anticipated that non-listed occupations would be covered by Wage Order
4 by extending coverage to "other related occupations."

Therefore, the Court finds that Plaintiffs are not covered by an
"applicable order of the Industrial Welfare Commission" as required in
Labor Code sections 226.7, 1194, and 1198 and their fourth, fifth and
sixth claims brought under these provisions against both Defendants
are DISMISSED with prejudice.

2.   Labor Code Sections 510 and 512

Plaintiffs have brought their sixth and seventh claims under
Labor Code sections 510 and 512.  The Legislature amended Labor Code
section 510 and added Labor Code section 512 as part of the Eight-
Hour-Day Restoration and Workplace Flexibility Act of 1999 discussed
above, also known as "AB 60."  Section 510 was amended to affirm the
eight-hour workday rule and Section 512 was added to codify meal
period requirements for employees working more than six hours in a
given day.  See Cal. Labor Code §§ 510, 512.  Neither provision

---

[4]Wage Order 4 was enacted long before Wage Order 17, so, at the
time of passing Wage Order 4, the IWC likely did not contemplate the
need to explicitly include police officers in the range of occupations
listed, so as also to exempt them from Wage Order 17.

1  exempts public employees.  Id.  Within AB 60, the Legislature also

2  enacted Labor Code section 515(b)(2), which states: "Except as

3  otherwise provided in this section and in subdivision (g) of Section

4  511, nothing in this section requires the commission to alter any

5  exemption from provisions regulating hours of work that was contained

6  in any valid wage order in effect in 1997.  Except as otherwise

7  provided in this division, the commission may review, retain, or

8  eliminate any exemption from provisions regulating hours of work that

9  was contained in any valid wage order in effect in 1997."  The

10  "provision" to which section 515(b)(2) refers is Labor Code Division

11  2, "Employment Regulations and Supervision," in which sections 510,

12  512 and 515 are all found.

13      Following AB 60, the IWC amended the wage orders to conform to

14  512's meal period requirements, but took no action to alter the

15  exemption for public employees, even though the Legislature

16  specifically permitted such changes to these exemptions in section

17  515(b)(2) if the IWC so chooses to make them.[5]  As the court in

18  Collins recognized, "[w]e read the second sentence in Labor Code

19  section 515, subdivision (b)(2) as expressing a legislative intent to

20  leave undisturbed the exemptions from 'provisions regulating hours of

21  work . . . contained in any valid wage order in effect in 1997.'"  105

22  Cal. App. 4th at 180.

23      In Collins, the court thoroughly reviewed section 515,

24  subdivision (b)(2), in determining whether the "motor carrier"

25  ─────────────────

26      [5]AB 60 disapproved of changes the IWC made to Wage Orders 1, 2,
    5, 7, and 9, which allowed for a 40-hour workweek and reverted the
27  changed wage orders back to the ones in effect in 1997.  (See Interim
    Wage Order of 2000, available at www.dir.ca.gov/iwc/
28  SummaryInterimWageOrder20000.html.)

1  exemption found in various wage orders was implicitly repealed by AB

2  60, such that section 510 would then apply to the plaintiffs. <u>Id.</u> at

3  178-80.  There, similar to the instant case, the plaintiffs claimed

4  that AB 60 eliminated the exemption from overtime in Wage Order 9 for

5  motor carriers.  <u>Id.</u>  The court analyzed the first sentence in section

6  515, subdivision (b)(2), and reasoned that "the first sentence

7  contains nothing that might affect the validity of the motor carrier

8  exemption in IWC wage orders.  The motor carrier exemption is

9  contained in a 'valid wage order in effect in 1997'" and "[t]he IWC is

10  not required to alter any exemption in valid 1997 wage order, except

11  to the extent that it is directed to review the exemption for

12  executive, administrative, and professional employees and to create

13  additional exemptions based on 'health or welfare of employees' – both

14  matters having no relation to the motor carried exemption."  <u>Id.</u> at

15  178.

16        The court then analyzed the second sentence, which is arguably

17  broader than the first in its reference to the "division," instead of

18  only the "section."  The plaintiffs in <u>Collins</u> advanced the precise

19  argument Plaintiffs advance here, namely, that the introductory

20  dependent clause in this sentence – "[e]xcept as otherwise provided in

21  this division" – refers to section 510 since it falls within "this

22  division," so "the IWC is thus barred from retaining the motor carrier

23  exemption, even though it was contained in a valid 1997 wage order."

24  <u>Id.</u>  The court rejected this contention, holding that "it is more

25  reasonable to read the introductory clause as referring to those

26  statutory exemptions from the general rule of overtime compensation

27  that are found in the division."  <u>Id.</u>  The court cited various

28  provisions within the division that provide exemptions from overtime

1   compensation (e.g., sections 511 (alternative workweeks), 514
2   (collective bargaining agreements), 554 (emergency work, rail
3   carriers, agriculture), and 1182.4 (camp employees)), and stated,
4   "[i]t is reasonable to suppose that, while recognizing the IWC's power
5   to 'review, retain, or eliminate any exemption,' the Legislature
6   intended to make clear that this power extended to nonstatutory
7   exemptions in wage orders and did not affect statutory exemptions in
8   this division." Id.

9       The court relied on two principles of statutory construction to
10  find against the plaintiffs.  First, "[i]t is a maxim of statutory
11  construction that [c]ourts should give meaning to every word of a
12  statute if possible, and should avoid a construction making any word
13  surplusage." Id. at 179 (citing Reno v. Baird, 18 Cal. 4th 640, 658
14  (1998)).  Pursuant to this principle, the court found: "If the 'except
15  as otherwise provided in this division' language in the second
16  sentence of Labor Code section 515 subdivision (b)(2), incorporates by
17  reference the general rule of section 510, it is difficult to assign
18  any meaning to the principal clause of the sentence.  The IWC cannot
19  'review, retain, or eliminate any exemption from provisions regulating
20  hours of work' if it is 'otherwise provided' that a general rule
21  without exceptions applies." Id.  The court also found that the
22  plaintiffs' interpretation "runs counter to the rule regarding repeal
23  by implication." Id. ("Absent an express declaration of legislative
24  intent, we will find an implied repeal only when there is no rational
25  basis for harmonizing the two potentially conflicting statutes, and
26  the statutes are irreconcilable, clearly repugnant, and so
27  inconsistent that the two cannot have concurrent operation."
28  (citations and internal quotations omitted)).  The court found that

1  the motor carrier exception was "[d]erived from a long-standing

2  statutory scheme, found in both state and federal law, that reflects

3  the peculiar circumstances of the trucking industry," and "[i]t should

4  not be inferred that the Legislature intended to repeal the exemption

5  without an express declaration of intent." Id.

6      To illustrate the far-reaching effects of the plaintiffs'

7  arguments, the court specifically cited the public employee exemption

8  in the wage orders, noting that "this exemption also lies outside the

9  general rule of Labor Code section 510.  It would indeed be an absurd

10  result . . . inconsistent with apparent legislative intent to

11  interpret otherwise provided language in section 515, subdivision

12  (b)(2) as calling for a comprehensive revision of exemptions in IWC

13  wage orders." Id. at 180.  Therefore, "[a]n implied repeal of IWC

14  regulations by the Act would plainly be inconsistent with this duty to

15  harmonize separate legislative enactments." Id.

16      This Court agrees with the thorough and persuasive analysis in

17  Collins.  Nothing in section 515, subsection (b)(2) suggests repeal of

18  the nonstatutory public employee exemption that existed in 1997.  In

19  fact, as in Collins, reading the introductory clause in the second

20  sentence to repeal all then-existing exemptions in favor of the broad

21  language in section 510 would result in rendering section 515,

22  subsection (b)(2) null.  The IWC would be stripped of any power to

23  "review, retain, or eliminate" any exemption regarding hours worked

24  because section 510 "otherwise provide[s] in this division" that work

25  hours must be maintained in accordance with its provisions, without

26  exemption for public employees.  As the Collins court noted, this

27  interpretation leads to an "absurd result" and cannot be endorsed.

28  Similarly, as the Collins court soundly recognized, since the public

1  employee exemption existed long before AB 60 was passed, the

2  Legislature was surely aware of it, yet did not indicate an intent to

3  implicitly repeal the provision.

4      These principles apply with equal force to section 512.

5  Plaintiffs do not explain or distinguish Collins, but rely on Abbe and

6  this Court's decision in Edwards to argue that section 512, by its

7  plain language, applies to all employees, including public employees.

8  Abbe, however, is inapplicable because the court there rested its

9  decision on the plaintiffs' section 512 claim on Wage Order 17's

10  incorporation of section 512 into its terms.  2006 U.S. Dist. LEXIS

11  79010, at *25.  The court did not analyze Collins, or section 515,

12  subsection (b)(2), but merely assumed that section 512 would apply to

13  the plaintiff police officers if they were covered by Wage Order 17.

14  Because Wage Order 17 does not apply here, Abbe is inapposite.

15      Similarly, this Court did not analyze this issue in Edwards.

16  Rather, in a footnote, the Court stated:

17      Defendant also contends that the plain language of section 512
        excludes public employees, such as Plaintiffs, from its
18      application.  The plain meaning of the statute, however, does no
        such thing.  If Defendant elects to challenge Plaintiffs' section
19      512 claim in the future, Defendant is free to cite caselaw
        supporting its position that section 512 excludes public
20      employees.  However, Defendant's exclusive reliance on the plain
        language of the statute is unavailing.

21

22  Edwards, Case No. 05-8890 at 4 n.2.  As a result, the Court's decision

23  in Edwards does not compel the Court to find that section 512 applies

24  to Plaintiffs here.[6]

25  _____

26      [6]Plaintiffs also argue that the Court need not look to the
    legislative history of sections 510 or 512 because the statute is
27  clear on its face.  However, the authority on which Plaintiffs rely
    recognizes that, "statutory interpretation begins with the plain
28                                                      (continued...)

1       In short, if the Legislature sought implicitly to repeal the

2   settled public employee exemptions in the wage orders by enacting

3   sections 510 and 512, while at the same time explicitly preserving the

4   IWC's power to maintain exemptions existing in 1997 by enacting

5   section 515, subsection (b)(2), it would have done so much more

6   explicitly than merely remaining silent on the issue.   Therefore, the

7   Court holds that Plaintiffs, as public employees, are not covered by

8   Labor Code sections 510 and 512.   Their sixth claim under section 510

9   and seventh claim under section 512 against both Defendants are

10  therefore DISMISSED with prejudice.[7]

11      **B.   Plaintiffs' Fourth, Fifth, Sixth, and Seventh Claims Against**

12          **Defendant Baca**

13      Plaintiffs also argue that Defendant Baca can be individually

14

15

16      [6](...continued)
    meaning of the statute's language, [and] [w]here the statutory
    language is clear and consistent with the statutory scheme at issue,

17  the plain language of the statute is conclusive and the judicial
    inquiry is at an end."   Aristocrat Techs. v. Int'l Game Tech., 491 F.

18  Supp. 2d 916, 925 (N.D. Cal. 2007) (brackets in original and emphasis
    added).   As the underscored language indicates, only if the plain

19  language is consistent with the statutory scheme should a court
    decline to look further; here, there is no such consistency.   See,

20  e.g., United States v. Daas, 198 F.3d 1167, 1174 (9th Cir. 1999) ("To
    determine the plain meaning of a particular statutory provision, and

21  thus congressional intent, the court looks to the entire statutory
    scheme.").   Moreover, Plaintiffs ignore that sections 510 and 512 are

22  silent on an exemption for public employees, rendering it ambiguous
    and permitting the Court to look to legislative history to interpret

23  the intent behind these provisions.   See id. ("If the statute is
    ambiguous - and only then - the courts may look to its legislative

24  history for evidence of congressional intent.").

25

26      [7]Because Plaintiffs are not covered by any wage order and because
    they do not fall within Labor Code sections 510 and 512, the Court
    need not address Defendants' argument that the California Constitution

27  prevents the County from being subject to meal and rest period and
    overtime provisions in the Labor Code.   See.e.g., In re Work Uniform

28  Cases, 133 Cal. App. 4th at 342-43.

1  liable for Labor Code violations because "one need only turn to the

2  Fair Employment and Housing Act to conclude that individual

3  supervisors can be held liable even when a statutory scheme provides

4  that only 'employers' can be held liable for certain conduct." (Opp'n

5  at 14:25-28.)  This citation and argument, however, are irrelevant to

6  the statutory interpretation of "employer" under the Labor Code.

7       As discussed above, Plaintiffs cannot maintain their claims under

8  the Labor Code against either Defendant.  Even if their claims were

9  not barred, the California Supreme Court has held that individual

10 officers, directors, and shareholders of a company are not liable for

11 alleged failure to pay overtime to the company's employees.  See

12 Reynolds v. Bement, 36 Cal. 4th 1075 (2005) (finding that individual

13 officers and directors could not be liable for failure to pay wages

14 under California Labor Code section 1194).  Plaintiffs have offered no

15 rationale against extending this decision to exclude Defendant Baca as

16 an "employer" under the Labor Code, and the Court finds Reynolds

17 controlling in this circumstance.  Therefore, Plaintiffs' fourth,

18 fifth, sixth, and seventh claims against Defendant Baca for Labor Code

19 violations are DISMISSED with prejudice on this basis.

20    **C.    Plaintiffs' Eighth Claim for Fraud, Ninth Claim for**

21         **Intentional Misrepresentation, and Tenth Claim for Negligent**

22         **Misrepresentation**

23       Plaintiffs have brought their eighth claim against both

24 Defendants, and have brought their ninth claim for intentional

25 misrepresentation and tenth claim for negligent misrepresentation only

26 against the County.  These claims rest on Plaintiffs' allegations that

27 Defendants misrepresented and fraudulently promised in their marketing

28 and recruitment materials and communications with employees that they

1   would pay overtime.  (Compl. ¶¶ 102-104.)  Each of these claims can

2   rest on three potential bases for liability: (1) direct liability

3   against the County; (2) vicarious liability against the County for

4   Defendant Baca's misrepresentations; and (3) direct liability against

5   Defendant Baca.  As discussed below, Plaintiffs have failed to

6   demonstrate that any of these bases results in liability for either

7   the County or Defendant Baca for fraudulent, intentional, or negligent

8   misrepresentation.

9           1.   The County's Tort Immunity under California Government

10               Code Sections 810 et seq.

11       In 1963, the Legislature adopted several interrelated statutory

12  provisions concerning governmental tort liability, known as the Tort

13  Claims Act.  See Cal. Govt. Code §§ 810-895.8 (governing liability

14  over public employers and employees).  Under these enactments,

15  "[e]xcept as otherwise provided by statute . . . a public entity is

16  not liable for any injury, whether such injury arises out of an act or

17  omission of the public entity or a public employee or any other

18  person."  Cal. Govt. Code § 815(a).  The California Supreme Court has

19  interpreted this provision to bar direct liability for public entities

20  unless the plaintiff can point to some specific statute that imposes

21  liability on a public entity.  See Eastburn v. Regional Fire

22  Protection Auth., 31 Cal. 4th 1175, 1183 (2003) (finding public entity

23  immune under section 815 because plaintiff failed to point to a

24  specific statute imposing liability on the public entity, other than

25  the general liability provisions in Cal. Civil Code § 1714).

26       California Civil Code section 1710 imposes liability for

27  "deceit," but, following the holding in Eastburn, this statute does

28  not abrogate the general immunity found in Government Code section

1  815.   In *Eastburn*, the plaintiff sought to impose liability on the
2  public entity defendant for negligence, despite section 815, because
3  Civil Code section 1714 codified common law principles of negligence
4  and could have been a "statute" under section 815.   *Id.*   The court
5  rejected this contention, noting first that, unlike individual public
6  employees, no code provision "makes public <u>agencies</u> liable for their
7  own negligent conduct or omission to the same extent as a private
8  person or entity."   *Id.* at 1179-80 (emphasis in original).   The court
9  then rejected the plaintiff's claim that Civil Code section 1714
10  imposed negligence liability: "[D]irect tort liability of public
11  entities must be based on a specific statute declaring them to be
12  liable, or at least creating some specific duty of care, and not on
13  the general tort provisions of Civil Code section 1714."   *Id.* at 1183.
14  The court reasoned, "[o]therwise, the general rule of immunity for
15  public entities would be largely eroded by the routine application of
16  general tort principles."   *Id.*   "[T]he intent of the [Tort Claims Act]
17  is not to expand the rights of plaintiffs in suits against
18  governmental entities, but to confine potential governmental liability
19  to rigidly delineated circumstances."   *Id.* (citing <u>Zelig v. County of</u>
20  <u>Los Angeles</u>, 27 Cal. 4th 1112, 1127 (2003)).

21      The codification of deceit in Civil Code section 1710 presents a
22  similar problem.   If it represented the requisite "statute" under
23  Government Code section 815 to abrogate governmental immunity for
24  fraudulent misrepresentations, any claim on this basis would
25  essentially survive enactment of section 815, an interpretation the
26  Court is reticent to adopt in light of the express purpose of the Tort
27  Claims Act to narrow grounds for public liability.   The comment to
28  section 815 limits its scope: "In the absence of a constitutional

1   requirement, public entities may be held liable only if a statute . .
2   . is found <u>declaring them</u> to be liable." Cal. Govt. Code § 815 cmt.
3   (emphasis added). In other words, the statutory provision providing
4   an exception to immunity under section 815 must declare public
5   entities liable, not simply declare the elements of the tort under
6   which a claim is brought, as Civil Code section 1710 does. Plaintiffs
7   have pointed to no statute that declares a public entity directly
8   liable for any intentional or negligent misrepresentation, and in the
9   absence of statutory abrogation, Government Code section 815 applies
10  and bars any claim against the County directly for any alleged
11  intentional or negligent misrepresentations.

12      Plaintiffs also concede that they do not seek to impose vicarious
13  liability on the County for any misrepresentation by Defendant Baca.
14  (Opp'n at 22:23-26.) The County "is not liable for an injury caused
15  by misrepresentations by an employee of the public entity, whether or
16  not such misrepresentations be negligent or intentional." Cal. Govt.
17  Code § 818.8. "Misrepresentations" under this statute specifically
18  include not only "intentional" and "negligent" conduct, but fraudulent
19  conduct as well. See <u>Warner Constr. Corp. v. City of Los Angeles</u>, 2
20  Cal. 3d 285, 293-94 (1970) ("A fraudulent concealment often composes
21  the basis for an action in tort, but tort actions for
22  misrepresentation against public agencies are barred by Government
23  Code section 818.8.") As a result, Plaintiffs cannot establish either
24  a direct or vicarious liability against the County for fraudulent,
25  intentional, or negligent misrepresentation and Plaintiffs' eighth,
26  ninth, and tenth claims against the County are DISMISSED with
27
28

1 | prejudice.[8]

2 |         2.    <u>Plaintiffs' Eighth Claim for Fraudulent</u>

3 |               <u>Misrepresentation Against Defendant Baca</u>

4 |     Plaintiffs bring their eighth claim for fraudulent

5 | misrepresentation against Defendant Baca.  Because this is a species

6 | of fraud, under Federal Rule of Civil Procedure 9(b), this claim must

7 | be plead with particularity.  This includes the "who, what, when,

8 | where, and how" of the alleged fraudulent misconduct.  <u>Vess v. Ciba-</u>

9 | <u>Geigy Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003).  "[W]hen

10 | averments of fraud are made, the circumstances constituting the

11 | alleged fraud [must] be specific enough to give defendants notice of

12 | the particular conduct . . . so that they can defend against the

13 | charge and not just deny that they have done anything wrong."  <u>Id.</u>

14 | (ellipsis in original and citation omitted).  "[A] plaintiff must set

15 | forth <u>more</u> than the neutral facts necessary to identify the

16 | transaction.  The plaintiff must set forth what is false or misleading

17 | about a statement, and why it is false."  <u>Id.</u>

18 |     To state a claim for fraud, Plaintiffs must plead: "(1) a

19 | misrepresentation (false representation, concealment, or

20 | nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to

21 | defraud, i.e., to induce reliance; (4) justifiable reliance; and

22 | resulting damage."  <u>Boblos Inc. v. Burlington Ins. Co.</u>, 2007 U.S.

23 | Dist. LEXIS 52567, *6 (E.D. Cal. 2007) (cases cited therein).

24 | California Government Code § 822.2 limits claims for

25 | misrepresentations by public employees: "A public employee acting in

26 |

27 |         [8]Because the Court finds the County immune from these claims, it
need not address the parties' dispute over whether Plaintiffs have
pled fraud against the County with particularity as required by

28 | Federal Rule of Civil Procedure 9(b).

1  the scope of his employment is not liable for an injury caused by his

2  misrepresentation, whether or not such misrepresentation be negligent

3  or intentional, unless he is guilty of actual fraud, corruption or

4  actual malice." This has been refined to require proof that, "in

5  addition to the essentials of common law deceit, a public employee is

6  motivated by corruption or actual malice, i.e., a conscious intent to

7  deceive, vex, annoy or harm the injured party." Masters v. San

8  Bernardino Cty. Employees' Retirement Assn., 32 Cal. App. 4th 30, 42

9  (1995).

10      Plaintiffs' complaint fails to satisfy Rule 9(b) and Government

11  Code section 822.2 because it does not allege malice or fraudulent

12  intent by Defendant Baca. While Rule 9(b) allows that "[m]alice,

13  intent, knowledge, and other condition of mind of a person may be

14  averred generally," Plaintiffs must still plead some actual fraud,

15  corruption, or actual malice to support their claim against Defendant

16  Baca. Cal. Govt. Code § 822.2. Plaintiffs allege that the actual

17  misrepresentation here occurred "[i]n one piece of recruitment

18  material" where "Defendants promise twice, on a single side of a 5" x

19  7 1/2" card, 'Paid overtime.'" (SAC ¶ 39.) Plaintiffs allege that

20  this representation is false because Defendants, in fact, do not pay

21  overtime. (Id. ¶ 102-104.) Plaintiffs allege that Defendant Baca's

22  underpayment of overtime was motivated by a desire to spend the

23  sheriff's office budget on a project called the "Community Partnership

24  Program." (SAC ¶ 46.) Because of budgetary constraints and increased

25  funding for this project, Plaintiffs believe they "were, and continue

26  to be, required to work overtime without being compensated for all

27  hours they actually work." (Id.) Plaintiffs claim:

28          Defendants instituted the unwritten policy of prohibiting or

discouraging Plaintiffs from accounting for all compensable time that they work because, as concluded by the Auditor-Controller for the County of Los Angeles, Sheriff Baca under-budgeted overtime three of the last four years ending December 12, 2003. The Auditor Controller concluded that Sheriff Baca has to "improve overtime controls" and that the Sheriff's Department "had limited central monitoring" of overtime.  The Auditor-Controller "recommended that the Sheriff consider budgeting and tracking reimbursed overtime separately from other overtime."

(Id. ¶ 49.)  Plaintiffs allege that this resulted in the Auditor-Controller's conclusion that "the tracking of patrol deputies' time is inaccurate and cannot be used to bill contract cities for actual services provided."  (Id. ¶ 50.)  Thus, "Defendants know they have a duty to compensate Plaintiffs at the proper overtime rates[,] . . . for all work performed pre and post shift, during and through meal and rest breaks, and otherwise on their free time.  Defendants have the financial ability to pay such overtime compensation, but willfully, knowingly, and intentionally fail to do so."  (Id. ¶ 53.)[9]

None of these allegations support a claim for fraudulent misrepresentations motivated by "a conscious intent to deceive, vex, annoy or harm" Plaintiffs.  Masters, 32 Cal. App. 4th at 42.  As alleged by Plaintiffs, Defendant Baca's budgeting may have been negligent, the result of bad judgment, or even intentionally improper, but Plaintiffs have not alleged that he specifically intended to vex, annoy or otherwise actually or maliciously defraud Plaintiffs out of their legally required overtime.  In order to fulfill the plain language and intent behind section 822.2, Plaintiffs must allege that

---

[9]Plaintiffs allege a claim for punitive damages here, because "Defendants act knowingly, willfully, and maliciously, and/or with reckless and callous disregard for Plaintiffs' protected rights, thus entitling Plaintiffs to punitive damages, save and excepting against the County of Los Angeles, so long as legally exempt."  (SAC ¶ 106.)

1  Defendant Baca specifically intended to withhold payment for some

2  malicious or corrupt reason, and merely attempting to fund a program

3  that Plaintiffs admit provides "community policing programs, Christmas

4  tree giveaways, programs for the homeless, and mature drivers training

5  courses," (SAC ¶ 47), in no way satisfies the pleading requirements

6  for this claim.  Therefore, Plaintiffs' eighth claim for fraudulent

7  misrepresentation against Defendant Baca is DISMISSED with prejudice

8  because Plaintiffs have had two prior opportunities to allege the

9  requisite elements and have failed to do so.  See McGlinchy v. Shell

10  Chem. Co., 845 F.2d 802, 809-810 (9th Cir. 1988) ("Repeated failure to

11  cure deficiencies by amendments previously allowed is another valid

12  reason for a district court to deny a party leave to amend.").

13  **D.   Plaintiffs' Eleventh Claim for Breach of Contract**

14  Plaintiffs have brought a breach of contract claim under two

15  MOUs.  The MOUs are legally binding collective bargaining contracts,

16  permitted by California Government Code § 3500 et seq.  See Glendale

17  City Employees' Assn. V. City of Glendale, 15 Cal. 3d 328, 334-35

18  (1975).  Because these MOUs cover Plaintiffs' claims for overtime and

19  other wages, Plaintiffs must exhaust the grievance and arbitration

20  procedure for these claims before seeking a judicial remedy.  See

21  Glendale City Employees' Assn., Inc. v. City of Glendale, 15 Cal. 3d

22  328, 342 (1975); Don daRoza, Inc. v. Northern Cal. Dist. Council of

23  Hod Carriers, 233 Cal. App. 2d 96, 103-04 (1965) ("It is the general

24  rule that a party to a collective bargaining contract which provides

25  grievance and arbitration machinery for the settlement of disputes

26  within the scope of such contracts must exhaust these internal

27  remedies before resorting to the courts in the absence of facts which

28  would excuse him from pursuing such remedies.").  Plaintiffs need not

1  exhaust the grievance procedure if it is inadequate, however.  <u>See</u>

2  <u>Glendale City Employees' Assn.</u>, 15 Cal. 3d at 342.

3       Plaintiffs do not dispute the validity of the MOUs or that they

4  govern their employment; rather, Plaintiffs argue: (1) the breach of

5  contract claim does not hinge on an interpretation or application of

6  the MOUs; and (2) the grievance process in the MOUs is inadequate

7  because it was designed to resolve minor individual claims and because

8  the MOUs do not provide Plaintiffs with an adequate remedy for the

9  potential multi-million dollar verdict.  (Opp'n at 23:6-13; SAC ¶

10  132.)  As discussed below, these contentions lack merit.

11       First, Plaintiffs' breach of contract claim undeniably hinges on

12  the interpretation and application of the MOUs.  Any contrary

13  assertion defies logic: to establish this claim, Plaintiffs must plead

14  and prove that Defendants have failed to fulfill their contractual

15  duties.  The Court (or a jury) can only resolve this by interpreting

16  and applying the provisions of the MOUs to the facts of this case.

17  Plaintiffs' frivolous argument to the contrary is not well taken.

18       Second, Plaintiffs have failed to demonstrate – aside from

19  unsupported speculation – that the grievance procedure is insufficient

20  to govern the class claims here.  Plaintiffs claim that the MOUs do

21  not provide for monetary remedies, but that is a matter for contract

22  negotiations in the first instance, not for a retrospective argument

23  that failure to include these remedies renders the grievance process

24  inadequate.  <u>See</u> <u>Jones v. Omnitrans</u>, 125 Cal. App. 4th  273, 281

25  (2004).  "[T]here is a strong public policy in favor of providing a

26  reasonable method of resolving disputes between local public agencies

27  and their employees concerning terms and conditions of employment."

28  <u>Id.</u> (citations omitted).  "To that end, [the Government Code]

1  authorizes the formation of employee organizations to represent
2  employees in negotiating terms and conditions of employment with
3  public agencies and the creation of an MOU establishing rules
4  governing the employer-employee relationship." Id.  These
5  negotiations will necessarily entail appropriate remedies for employee
6  grievances, whether or not those remedies include monetary payments.
7  Plaintiffs cannot now avoid the grievance process simply because this
8  form of remedy was not bargained for in the MOUs.

9       Plaintiffs' reliance on Glendale City Employees' Association to
10  argue inadequacy of the grievance process for multi-million class
11  claims is unavailing.  The court there recognized that claims under
12  the MOU at issue could be brought if exhausting the grievance process
13  was futile.  15 Cal. 3d at 342-43.  However, the claims at issue there
14  were fundamentally different than the instant case; there, the
15  employees sued as a class to challenge a salary survey required in the
16  MOU but improperly conducted by the city employer.  Id. at 333.  The
17  primary issue was whether the MOU was binding, and, if so, whether
18  exhaustion was required.  Id. at 334.  The court relied on this unique
19  circumstance to conclude the standard grievance process under the MOU
20  was inadequate to determine in the first instance whether the MOU was
21  binding for any purpose.  Id. at 342.  The court also found that "[a]
22  procedure which provides merely for the submission of a grievance
23  form, without the taking of testimony, the submission of legal briefs,
24  or resolution by an impartial finder of fact is manifestly inadequate
25  to handle disputes of the crucial and complex nature of the instant
26  case, which turns on the effect of the underlying memorandum of
27  understanding itself." Id. at 342-43.

28       The instant case is far different.  The only apparent

33

complexities here are the number of potential plaintiffs and the
monetary value of any potential award.  The claims are otherwise
straightforward: do Defendants pay appropriate overtime and provide
appropriate meal and rest periods as required by law?  Moreover, the
MOUs provide for an informal grievance procedure in which an employee
may bring a complaint to his or her immediate supervisor, and then to
a second-level supervisor.  (Def.'s RJN, Ex. 1 at 104, Ex. 2 at 94-
95.)  Then an employee may proceed to the first step of the formal
grievance procedure with a third-level supervisor or middle
management.  (Id., Ex. 1 at 105, Ex. 2 at 95-96.)  The employee may
then proceed to the second step with a review board.  (Id., Ex. 1 at
106-07, Ex. 2 at 96-98.)  Finally and most importantly, the employee
may proceed to arbitration, which includes presentation to a neutral
factfinder.  (Id., Ex. 1 at 108-12, Ex. 2 at 98-103.)

Plaintiffs have offered no reason other than the numerosity of
the class and the value of the potential claims to preclude grieving
and arbitrating the instant claims, and the Court can find no reason
why an arbitrator could not adequately resolve a class action of this
size and magnitude with any less competence than this Court.  Given
the strong presumption in favor of arbitration to which Plaintiffs
agreed, see Jones, 125 Cal. App. 4th at 281, and the clear
arbitrability of Plaintiffs' breach of contract claims, Plaintiffs
must exhaust the grievance and arbitration process.  Having failed to
do so, the Court DISMISSES Plaintiffs' eleventh claim for breach of
contract with prejudice.

**E.   Plaintiffs' Claim for Punitive Damages**

Finally, Defendants move under Federal Rule of Civil Procedure
12(f) to strike Plaintiffs' prayer for punitive damages against

34

1   Defendants.  Plaintiffs seek punitive damages for their eighth claim

2   for fraudulent misrepresentation and ninth claim for intentional

3   misrepresentation.  (SAC ¶ 106, SAC Prayer ¶¶ 37, 43.)  Because the

4   Court dismisses these claims against both Defendants with prejudice,

5   the Court GRANTS Defendants' motion to strike all claims for punitive

6   damages.

7   **V.   CONCLUSION**

8   The Court GRANTS Defendants' motion to dismiss Plaintiffs'

9   fourth, fifth, sixth, seventh, eighth, ninth, tenth, and eleventh

10   claims in the SAC.  Because further amendment would be futile and

11   because Plaintiffs have already been afforded three opportunities to

12   plead their claims, the Court dismisses these claims WITH PREJUDICE.

13   The Court GRANTS Defendants' motion to strike Plaintiffs' prayer for

14   punitive damages.

15   **IT IS SO ORDERED.**

16

17   **DATED:** _____Oct 16, 2007_____  _____Audrey B Collins_____

18   **AUDREY B. COLLINS**
      **UNITED STATES DISTRICT JUDGE**

19

20

21

22

23

24

25

26

27

28