O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ANGELA LOCKHART, GAIL SCORZA, and PATRICK GOMEZ, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>COUNTY OF LOS ANGELES, and LEE BACA, *et al.*,<br><br>     Defendants. | CV 07-1680 ABC (PJWx)<br><br>ORDER RE: PLAINTIFFS' MOTION FOR CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. §216(b) |

   Pending before the Court is Plaintiffs' Motion for Certification of Collective Action Pursuant to 29 U.S.C. §216(b) ("Motion"), filed on June 6, 2008. Defendants filed an Opposition on June 20, 2008, and Plaintiffs filed a Reply on July 3, 2008. The Motion came on for hearing on July 14, 2008. Having considered the materials submitted by the parties, argument of counsel, and the case file, the Court **GRANTS** Plaintiffs' Motion.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs Angela Lockhart, Gail Scorza, and Patrick Gomez ("Plaintiffs") are or were employed as Deputy Sheriffs by Defendants County of Los Angeles and Sheriff Lee Baca ("County"). In this action, Plaintiffs claim that the County engaged in a practice of requiring them and other deputy sheriffs to work without compensation at their regular or overtime wage. Plaintiffs allege that the County's policy has required deputy sheriffs to conduct pre-shift and post-shift activities for the benefit of the County without compensation. In addition, County has required Plaintiffs to work through meal periods, rest periods, and free time without compensation. Plaintiffs contend that such practices violate minimum wage and overtime compensation requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq*.

Plaintiffs now move to certify this as a collective action pursuant to 29 U.S.C. §216(b). The proposed class is defined as follows:

> All current and former peace officer employees of the Defendant County of Los Angeles ("Defendant") with the rank of lieutenant and below, represented by the Association of Los Angeles County Deputy Sheriffs ("ALADS") that worked at any time between March 13, 2004 (three years preceding the filing of the complaint)[1] and the date of entry of judgment.

---

[1] Plaintiffs initially presumed a four year statute of limitations and defined the class as those employed after March 13, 2003. However, in Reply, Plaintiffs agreed with County that FLSA claims are subject to a three year limitations period. As such, the operative date is March 13, 2004.

2

1      In support of their Motion, Plaintiffs submitted declarations
2 from two named plaintiffs asserting that they were subject to
3 practices that required them to work "off the clock."  Plaintiffs also
4 submitted County's Manual of Policies and Procedures that they contend
5 shows that failure to pay wages and/or overtime is a matter of County
6 policy.  Finally, Plaintiffs submitted performance evaluations of
7 other deputies who have joined in this action demonstrating that they
8 regularly come in early and stay late.
9      For example, Plaintiff Lockhart states in her declaration that
10 she was "required by the Department on a daily basis to maintain
11 equipment, dress-up and dress-down, and debrief deputies relieving me
12 of my shift, among many other activities, because these are an
13 indispensable part of law enforcement work."  (Lockhart Decl. at ¶ 4.)
14 She further states that "Many of [these] activities cannot be
15 completed while 'on the clock,' or prior to being on-duty, but must be
16 completed while off-duty because of the demands of law enforcement
17 work.  Generally, these activities take place daily and require at
18 least 20-30 minutes per day of pre-shift and/or post-shift time."
19 (Id. at ¶ 5.)  Lockhart also states that she was aware of the
20 Department's guideline for overtime, which generally only allows
21 reporting of overtime in half-hour increments, and that even though
22 she had worked overtime of thirty minutes or less, she had never
23 reported it out of respect for this policy and because reporting such
24 overtime was generally discouraged by her supervisors (Id. at ¶ 6.)
25 Lockhart further states that while she was in the Patrol Division, she
26 was told by her sergeant that trainees were not allowed to submit
27 requests or overtime.  However, during her training, Lockhart
28 performed pre-shift and post-shift activities for an hour before and

after her shift, and never received overtime compensation for that time. (Id. at ¶ 6.) Lockhart also asserts that she routinely was forced to miss or cut short meal periods because of Department-mandated responsibilities, but never reported this overtime because of Department policy and because it was otherwise discouraged by her superiors. (Id. at ¶ 7.) She also states that, during training, she missed all of her meal periods. (Id.) Finally, Lockhart asserts that her superiors were aware that she performed these activities, and that her superiors either actively discouraged reporting of overtime or failed to encourage reporting of overtime. (Id. at ¶ 9.) For example, Lockhart states that she was involved with training activities that lasted well beyond her normal work hours but received no instruction, express or implied, about receiving overtime payment for such time. (Id.)

    The declaration of Gail Scorza recites similar allegations. For example, Scorza states, "In my present assignment, I have been denied overtime. During briefing by Sgt. Pamela Johnson, she told deputies not to submit for overtime as she would not approve it because 15 minutes was the minimum." (Scorza Decl. at ¶ 6.)

    County's Manual of Policies and Procedures ("MPP"), Bates numbered DEF 2604 - DEF 2639, is attached as Exhibit A to the Declaration of Christopher D. Nissen. See also Nissen Decl. Ex. B, County's Initial Disclosures (identifying documents numbered DEF 2604 - DEF 2639 as County's Manual of Policies and Procedures, Section 3-02/010.10 re: Working Hours). The MPP contains the following provisions: "Deputy Personnel," such as Plaintiffs, are subject to a policy that "Overtime is defined as time worked in excess of 40 hours in a workweek." (Id. Ex. A at DEF 2607.) However, one of the "General

Guidelines" for overtime provides, "Credit for overtime worked shall be accrued on a daily basis in half-hour increments for each full half hour worked. Overtime shall not be accrued in smaller increments, except as required by an applicable MOU or federal law." (Id. at DEF 2612.) Plaintiffs are also subject to the policy that "All overtime must be authorized in advance, **whether or not it is to be paid**." (Id. at DEF 2609) (emphasis added). The MPP also provides that, "If the employee has been afforded at least 20 minutes, but less than 30 minutes, the meal period will be deemed to have been taken." (Id. at 2604.) The MPP also states, "The appropriate rate of payment for all **overtime which qualifies for payment** at the premium rate shall be found in the current Salary Ordinance." (Id. at 2607) (emphasis added). According to Plaintiffs, these provisions demonstrate that County discourages Plaintiffs from seeking compensation when they work less than thirty minutes of overtime; expressly contemplates truncating Plaintiffs' meal periods by ten minutes, time for which Plaintiffs are not paid; and otherwise contemplates that under certain circumstances, overtime is not paid.

Finally, the performance evaluations of other deputies who have joined in this action demonstrate that those deputies arrive at work early and stay late, and demonstrate that various "off the clock" tasks such as those relating to equipment maintenance and grooming were done for County's benefit and are therefore compensable. (See, e.g., Nissen Decl. Exs. C through F; K though T.) Plaintiffs further contend that the payroll records for at least one of these deputies, Deputy Orosco, are notably lacking in overtime compensation despite performance evaluations suggesting that Orosco typically works longer than a regular shift. (Nissen Decl. Exs. G and H.)

**II.  ANALYSIS**

**A.  Legal Standard for a §216(b) Motion**

The FLSA requires covered employers to compensate non-exempt employees for time worked in excess of statutorily-defined maximum hours.  See 29 U.S.C. §207(a).  Section 16(b) of the FLSA provides that an employee may bring a collective action on behalf of himself and other "similarly situated" employees.  29 U.S.C. §216(b).  In a §216(b) collective action, employees wishing to join the suit must "opt-in" by filing a written consent with the court.  Id.  If an employee does not file a written consent, then that employee is not bound by the outcome of the collective action.  Leuthold v. Destination America, Inc., 224 F.R.D. 462, 466 (N.D. Cal. 2004).  The court may authorize the named §216(b) plaintiffs to send notice to all potential plaintiffs, and may set a deadline for those plaintiffs to "opt-in" to the suit.  Id.; see also Pfohl v. Farmers Ins. Group., 2004 WL 554834 at *2 (C.D. Cal. 2004).

It is within the discretion of the district court to determine whether a certification of a §216(b) collective action is appropriate. Leuthold, 224 F.R.D. at 466.  Although the FLSA does not require certification for collective actions, certification in a §216(b) collective action is an effective case management tool, allowing the court to control the notice procedure, the definition of the class, the cut-off date for opting-in, and the orderly joinder of the parties.  See Hoffmann-La Roche Inc., v. Sperling, 493 U.S. 165, 170-72 (1989).

Most courts have applied a two-step approach to determining whether certification of a §216(b) collective action is appropriate. See Leuthold, 224 F.R.D. at 466.  Under the two-step approach, the

first step is for the court to decide, "based primarily on the pleadings and any affidavits submitted by the parties, whether the potential class should be given notice of the action." Id. at 467; see also Pfohl, 2004 WL 554834 at *2. Given the limited amount of evidence generally available to the court at this stage in the proceedings, this determination is usually made "under a fairly lenient standard and typically results in conditional class certification." Id.

To obtain conditional certification, the plaintiffs must show that "the proposed lead plaintiffs and the proposed collective action group are 'similarly situated' for purposes of §216(b)." Leuthold, 224 F.R.D. at 466. "Plaintiff need not show that his position is or was identical to the putative class members' positions; a class may be certified under the FLSA if the named plaintiff can show that his position was or is similar to those of the absent class members. However, unsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden." Freeman v. Wal-Mart Stores, Inc., 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003) (internal citations omitted); see also Bernard v. Household Intern., Inc., 231 F. Supp. 2d 433, 435 (E.D. Va. 2002) ("Mere allegations will not suffice; some factual evidence is necessary.").

The second step occurs once discovery is complete and the case is nearing readiness for trial. At that time, the party opposing §216(b) collective action treatment may move to decertify the class. Leuthold, 224 F.R.D. at 466 (citing Kane v. Gage Merchandising Svcs., Inc., 138 F. Supp. 2d 212, 214 (D. Mass. 2001). Whether to decertify is a factual determination, made by the court, based on the following factors: "(1) the disparate factual and employment settings of the

individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations.  Id. (citing Pfohl, 2004 WL 554834 at **2-3).  If after examining the factual record, the court determines that the plaintiffs are not similarly situated, then the court may decertify the collective action and dismiss the opt-in plaintiffs without prejudice.  Id. (citing Kane, 138 F. Supp. 2d at 214).

**B.   The Court Will Adhere to the Two-Step Analysis**

Where substantial discovery has been completed, some courts have skipped the first-step analysis and proceeded directly to the second step.  See Pfohl, 2004 WL 554834 at *3 (noting that the parties agreed that there had been extensive discovery, and finding that it was therefore appropriate to proceed directly to the second step analysis; denied certification); Ray v. Motel 6 Operating, L.P.,1996 W.L. 938231 at 4 (D. Minn. 1996) (declining to apply "lenient standard at the notice stage" because the facts before the Court are extensive"); see also Hinojos v. Home Depot, 2006 WL 3712944 (D. Nev. 2006) (applying second step analysis, noting that it was clear that the named plaintiffs were not similarly situated, and that the action would not be manageable). But see Leuthold, 224 F.R.D. at 468 (holding that "[a]lthough it is a close question, given that extensive discovery has already taken place, the Court agrees with plaintiffs that the court ought to begin the FLSA class certification analysis with the question whether notice should be sent to the prospective class.")  County argues that the Court should skip the first step in this case and instead apply the more stringent second step as it did in Smith v. T-Mobile, 2007 WL 2385131 (C.D. Cal. 2007).

However, the reasons why this Court skipped the first stage and

applied the second stage analysis in Smith do not obtain in this case. In Smith, proceeding directly to the second stage was warranted because the litigation was already advanced: discovery as to class issues had been completed, the parties had a sampling of the claims the action involved, and discovery as to the existence of a corporation-wide policy had been conducted and no evidence of such a policy was uncovered. Smith, 2007 WL 2385131 at 4. Thus, in Smith, the factual record was extensive. This case, by contrast, is still in its early stages. Nothing in the record suggests that discovery as substantial as that in Smith has taken place. Accordingly, the Court will apply only the lenient first-tier analysis.

**C.   Plaintiffs Have Shown that they are "Similarly Situated" to the Members of the Proposed Group.**

Here, applying the lenient standard used in the first step of the analysis, the Court finds that conditional certification of a §216(b) collective action is appropriate. Plaintiffs' complaint, affidavits and supporting exhibits assert that Plaintiffs Lockhart and Scorza routinely work or worked unpaid overtime in violation of the FLSA, that the proposed class members are employed in positions similar to the named Plaintiffs' positions, and that members of the proposed group were likely to have experienced similar alleged non-payment of overtime and wages. Furthermore, Plaintiffs have pointed to evidence – their own affidavits and the MPP – that these alleged violations of the FLSA were committed as a result of County's overtime policies. The factual allegations and supporting evidence that potential class members were not paid wages they earned or were not paid overtime, coupled with the allegation and evidence that not paying overtime is County's policy, is sufficient to establish the common legal theory

necessary to show that "there is a colorable claim that [there is] a similarly situated group of people." Ray v. Motel 6 Operating, Ltd. Partnership, 1996 WL 938231, *4 -5 (D. Minn. 1996).

In its opposition, County focuses on differences in job duties, ranks, employment locations, and supervisors among the named Plaintiffs and other potential class members. However, such arguments are better suited for the more stringent second step of the §216(b) collective action certification analysis, that is, Defendant's arguments are better suited for a motion to decertify the §216(b) collective action once notice has been given and the deadline to opt-in has passed. County also argues that there is an inherent conflict between those class members above the rank of Sergeant (Sergeants and Lieutenants) and class members who are deputies (below the rank of Sergeant) because the deputy plaintiffs are essentially accusing their superiors (Sergeants and Lieutenants) of discouraging them from requesting overtime. However, this issue too is better addressed in connection with any second-stage motion to decertify or redefine the class. Finally, County challenges Plaintiffs' interpretation of the MPP, arguing that Plaintiffs' claims are baseless. However, this argument goes to the merits of the claims and is therefore not a proper ground for denying a motion for certification. See, e.g., Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (stating that the court should not judge the ultimate merits of the case at the class certification stage.)

For the foregoing reasons, the Court finds that Plaintiffs have made the threshold showing that the potential members of the §216(b) collective action are "similarly situated", and that the collective action should be certified for purposes of notifying potential class

1 members of the pendency of the suit.

2 In the absence of any objection to their qualifications, the
3 Court appoints Angela Lockhart, Gail Scorza, and Patrick Gomez
4 collective action class representatives, and M. Alim Malik and
5 Christopher D. Nissen of Jackson DeMarco Tidus & Peckenpaugh as lead
6 counsel for this collective action.

7 Finally, County requests that, to protect the potential class
8 members' private information from disclosure as required by the
9 California Penal Code, the Court should appoint a third-party
10 administrator to distribute notice to potential class members.
11 Plaintiffs consent to this suggestion provided that Plaintiffs and
12 County split the cost. The Court agrees with both proposals:
13 Plaintiffs' private information should be protected as required by the
14 Penal Code, and appointing a third-party administrator to give notice
15 would promote that goal. However, equity dictates that the cost of
16 engaging an administrator be borne by both parties because neither
17 party has imposed or can avoid these costs.

## IV. CONCLUSION

19 Based on the foregoing the Court hereby **GRANTS** Plaintiffs'
20 §216(b) Motion and conditionally certifies the proposed collective
21 action for purposes of notifying proposed class members of the
22 pendency of the suit. The parties are **ORDERED** to meet and confer and
23 file a revised proposed order consistent with this Order within ten
24 (10) days.

**IT IS SO ORDERED.**

**DATED:** July 14, 2008

_____
**AUDREY B. COLLINS
UNITED STATES DISTRICT JUDGE**

11